IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| PAMELA F. BEILER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FIFTH THIRD BANK, | ) | |
| | ) | 1:13CV867 |
| Defendant and Third | ) | |
| Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SCOTT A. FOSTER AND PAM F. BEILER, | ) | |
| | ) | |
| Third Party Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, District Judge.

This is an action involving alleged unlawful telephone calls in violation of the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227 et seq. Plaintiff Pamela F. Beiler claims that Defendant Fifth Third Bank ("Fifth Third") violated the TCPA by making unauthorized calls to her cell phone. Fifth Third alleges that it already settled such claims with Beiler's husband, Scott A. Foster, after he claimed the cell phone numbers were his, so the bank has filed claims against both of them. Before the court are the following: Beiler's motions to dismiss Fifth Third's counterclaim of civil conspiracy against her (Docs. 10, 25); Foster's motion to dismiss the civil conspiracy claim against him and to compel

arbitration of Fifth Third's fraud and negligent misrepresentation claims (Docs. 12, 20); and Foster's motion to participate in electronic filing pursuant to Local Rule 5.3(c)(2) (Doc. 19). For the reasons stated, the motion to compel arbitration will be granted, the remaining claims will be stayed pending arbitration, and the court will not reach the motions to dismiss Fifth Third's civil conspiracy claims. Foster's motion to participate in electronic filing will be granted.

I. BACKGROUND

A. Beiler's TCPA Claim

Beiler's complaint, taken as true at this stage of the proceedings, alleges the following:

In 2008, Foster – Beiler's husband - applied for a credit card through Fifth Third. (Doc. 1 ¶¶ 14, 21.) Beiler was unaware that Foster had opened the account, and she has never been a party to any agreement regarding, or an authorized user of, any Fifth Third credit cards. (Id. ¶¶ 22-23.) The account went into default, and beginning on October 1, 2009, Fifth Third began placing calls to cell phone numbers ending in 1563 (the "1563 number") and 4711 (the "4711 number," and collectively "the phone numbers") in an attempt to collect amounts allegedly owed by Foster. (Id. ¶¶ 24-25.) Fifth Third called the phone numbers approximately 300 times between October 1, 2009, and

2

March 17, 2010. (Id. ¶ 25.) Beiler alleges that both phone numbers were issued to her by Verizon Wireless and that Foster has never been a subscriber to either one. (Id. ¶ 26.) The calls were made by an automatic telephone dialing system without Beiler's consent. (Id. ¶¶ 27-28, 30-31, 34-39.)

B. **Fifth Third's Counterclaims**

In its amended answer and counterclaims (Doc. 14), Fifth Third admits that Foster applied for a credit card account on December 24, 2008 (id. ¶ 16), and that it made calls – some of which used an automatic telephone dialing system - to the phone numbers to discuss the delinquent status of the account with Foster (id. ¶¶ 19, 21, 23, 27).[1] Fifth Third further alleges that Foster listed the 1563 number as his own when he applied for a credit card. (Id. ¶¶ 41-45.) After the account became delinquent, Fifth Third began contacting Foster at the 1563 number. (Id. ¶ 46.)

According to Fifth Third, in response to the calls, Foster sent demand letters and filed an arbitration claim alleging that Fifth Third had violated the TCPA and North Carolina law by contacting him. (Id. ¶ 47.) At that time, Foster provided an affidavit stating he had received over 200 calls on the 1563 number, describing it as "my cellular telephone." (Id. ¶¶ 48-

---

[1] Fifth Third only admits that it used an automatic telephone dialing system to call the 1563 number – it denies that it ever used such a system to call the 4711 number. (Id. ¶ 21.)

3

49.) The phone calls allegedly are many of the same calls now described in Beiler's complaint. (Id. ¶ 52.) Earlier, in reliance on Foster's representations, Fifth Third entered into a Confidential Settlement Agreement (the "Settlement Agreement") with Foster. (Id. ¶¶ 53-54.)

Fifth Third now alleges that Beiler and Foster conspired to extort settlement funds by providing false or misleading information regarding ownership of the 1563 number. (Id. ¶¶ 58-62.) Thus, Fifth Third brings claims of fraud and negligent misrepresentation against Foster (id. ¶¶ 64-85) and a civil conspiracy claim against both Beiler and Foster (id. ¶¶ 57-63).

### C. Procedural History

Beiler filed her complaint on September 30, 2013. (Doc. 1.) Fifth Third timely answered and asserted counterclaims of civil conspiracy, fraud, and negligent misrepresentation, as described above. (Doc. 4.) Beiler and Foster filed motions to dismiss, which prompted Fifth Third to file an amended answer and counterclaims on December 13, 2013, pursuant to Rule 15(a)(1)(B), asserting the same three counterclaims. (Doc. 14.) On January 2, 2014, Foster moved to dismiss the civil conspiracy claim and to compel arbitration on the fraud and negligent misrepresentation claims asserted in Fifth Third's amended answer and counterclaims. (Doc. 20.) On January 10, Beiler

moved to dismiss the conspiracy claim against her.[2] (Doc. 25.) Fifth Third has responded to both motions (Docs. 32, 34) and Beiler and Foster have replied (Docs. 35, 36).

**II. ANALYSIS**

Foster moves to compel arbitration on Fifth Third's fraud and negligent misrepresentation claims against him on the ground that it is required by the agreement he accepted when he signed up for Fifth Third's credit card (the "Credit Card Agreement"). The Credit Card Agreement[3] includes a clause stating that "any Claim will be arbitrated instead of litigated in court." (Doc. 21-1 at 6.) "Claim" is defined as follows:

> Any claim, dispute or controversy between you and us arising from or relating to this [Credit Card] Agreement, any prior agreement you may have had with us or the relationships resulting from the [Credit Card] Agreement or any prior agreement, including the validity, enforceability or scope of this provision, the [Credit Card] Agreement, or any prior agreement. Claim includes claims of every kind and nature, including but not limited to initial claims, counterclaims, cross-claims and third party claims and claims based upon contract, tort, fraud and other

---

[2] Because Fifth Third filed an amended answer and counterclaims, the original motions to dismiss and to compel arbitration (Docs. 10, 12) have been mooted.

[3] The Credit Card Agreement is not attached to the pleadings. "[C]ourts may consider a document attached by the defendant to its motion to dismiss where the document 'was integral to and explicitly relied on in the complaint' and where 'the plaintiff[] do[es] not challenge its authenticity.'" Braun v. Maynard, 652 F.3d 557, 559–60 n.1 (4th Cir. 2011) (quoting Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004)). Here, the Credit Card Agreement is referenced in Fifth Third's counterclaim, attached to Foster's motion to dismiss, and not contested by Fifth Third.

5

> intentional torts, statute, common law and equity. The term Claim is to be given the broadest possible meaning and includes, by way of example and without limitation, any claim, dispute or controversy that arises from or relates to (a) the Account created by the [Credit Card] Agreement or any prior agreement or any balances on the Account (b) advertisements, promotions or oral or written statements related to the Account or the terms of financing, and (c) your use of the Account.

(Id. at 2.) Foster characterizes the current dispute as one arising out of that original agreement and contends that Fifth Third must arbitrate its fraud and negligent misrepresentation claims.

Arbitration clauses are governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq. General state-law principles of contract formation and interpretation apply to arbitration clauses. Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ., 489 U.S. 468, 475-76 (1989). As with all contracts, courts must give effect to the intention of the parties in crafting an arbitration provision. Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 682-83 (2010). However, the FAA creates a heavy presumption in favor of arbitration. Levin v. Alms & Assocs., Inc., 634 F.3d 260, 266 (4th Cir. 2011). This presumption "requires that when the scope of an arbitration clause is open to question, a court must decide the question in favor of arbitration." Id. (quoting Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co., 867 F.2d

809, 812 (4th Cir. 1989)).  Because there is no dispute that the Credit Card Agreement constitutes a valid contract and that the arbitration clause – if it covers Fifth Third's claims – is otherwise enforceable, the court need not consult state contract law.[4]  Rather, the "federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the [FAA]" is applicable.  <u>Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.</u>, 473 U.S. 614, 626 (1985) (quoting <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24 (1983)); <u>see also</u> <u>Volt Info Scis.</u>, 489 U.S. at 485 (Brennan, J., dissenting) (the FAA "establishes substantive federal law that must be consulted in determining whether (or to what extent) a given contract provides for arbitration").

The arbitration provision in the Credit Card Agreement is broad.  A "Claim" includes any dispute, claim, or controversy "arising from or relating to" the Credit Card Agreement or "the relationships resulting from" that Agreement.  (Doc. 21-1 at 2.) The definition even includes an instruction that "[t]he term Claim is to be given the broadest possible meaning."  (<u>Id.</u>)  Any claim falling under this definition must be arbitrated.  (<u>Id.</u> at 6.)

---

[4] The court need not, therefore, distinguish between North Carolina law, which the parties cite, and Ohio law, which the Credit Card Agreement's choice-of-law clause says governs.  (Doc. 21-1 at 7.)

7

Under the FAA, "a broadly-worded arbitration clause applies to disputes that do not arise under the governing contract when a 'significant relationship' exists between the asserted claims and the contract in which the arbitration clause is contained." Long v. Silver, 248 F.3d 309, 316 (4th Cir. 2001), overruled on other grounds by Hertz Corp. v. Friend, 559 U.S. 77 (2010) (quoting Am. Recovery Corp. v. Computerized Thermal Imaging, Inc., 93 F.3d 88, 93 (4th Cir. 1996)); see Wachovia Bank, Nat'l Ass'n v. Schmidt, 445 F.3d 762, 767 (4th Cir. 2006). The arbitration clauses described as "broadly-worded" in Long, American Recovery, and Wachovia contained language strikingly similar to the instant provision. See Long, 248 F.3d at 316 (clauses in two separate contracts applied to "[a]ny and all disputes . . . arising out of or in connection with [the first contract]" and "any dispute arising out of or relating to [the second contract]"); Am. Recovery, 96 F.3d at 90, 93 (provision providing that "[a]ny dispute, controversy, or claim arising out of or relating to [the contract] shall be resolved by binding arbitration" was "capable of an expansive reach"); Wachovia, 445 F.3d at 766-67 (clause referred to arbitration "any claim or controversy arising out of, or relating to" the contract). Therefore, the relevant inquiry is whether Fifth Third's claims bear a significant relationship to the Credit Card Agreement.

Here, there can be no question that such a relationship exists. To be sure, there would be no relationship between Foster and Fifth Third at all absent the Credit Card Agreement. Cf. Long, 248 F.3d at 318 (holding that a claim for breach of fiduciary duty was subject to arbitration under a prior contract that made the plaintiff a shareholder in the corporation because the claim would not have been valid "but for the existence of the [original agreement]"). The claims stem from a Settlement Agreement that itself was necessitated by Foster's default on the Credit Card Agreement. Therefore, especially given the presumption of arbitrability, the court finds that Fifth Third's fraud and negligent misrepresentation claims, which arise from the Settlement Agreement, are significantly related to the Credit Card Agreement.[5]

Although arbitration is required on Fifth Third's fraud and negligent misrepresentation counterclaims, several other claims remain in this case, including Beiler's original TCPA claim and

---

[5] Although the parties have not noted it, the Credit Card Agreement also indicates that the parties agreed to have the arbitrator determine the *scope* of the arbitration provision itself. (Doc. 21-1 at 2, 6.) "Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter." First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 943 (1995) (internal citations omitted) (emphasis in original). Because the clause itself grants the arbitrator the power to determine whether any particular claim is arbitrable, this court must "give considerable leeway to the arbitrator, setting aside his or her decision only in certain narrow circumstances." Id.

9

Fifth Third's civil conspiracy counterclaim. Thus, dismissal is not a proper remedy. Cf. Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 709-10 (4th Cir. 2001) ("[D]ismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable."). If Fifth Third is correct that the 1563 number belonged to Foster – an issue that will likely be resolved in the arbitration – Beiler's ability to state a TCPA claim may be affected. Thus, in order to promote judicial economy and to avoid confusion and possibly inconsistent results, all claims involved in this action will be stayed pending the outcome of the arbitration between Foster and Fifth Third. See Am. Home Assurance Co. v. Vecco Concrete Constr. Co., Inc. of Va., 629 F.2d 961, 964 (4th Cir. 1980); Newman ex rel. Wallace v. First Atlantic Res. Corp., 170 F. Supp. 2d 585, 593 (M.D.N.C. 2001) ("If questions of fact common to all actions in the matter are likely to be settled in arbitration, the district court action should be stayed."). Thus, the court will not reach the motions to dismiss Fifth Third's civil conspiracy claims.

**III. CONCLUSION**

For the reasons stated, the court finds that Fifth Third's fraud and negligent misrepresentation claims are covered by the Credit Card Agreement's arbitration clause.

IT IS THEREFORE ORDERED as follows:

1. Foster's motion to dismiss, stay, and to compel arbitration (Doc. 20) is GRANTED IN PART AND DENIED IN PART. Fifth Third's fraud and negligent misrepresentation claims against Foster shall be arbitrated. Pursuant to 9 U.S.C. § 3, the remaining claims in this case will be STAYED pending arbitration, and the motions to dismiss by Beiler and Foster (Docs. 20 and 25) will be DENIED WITHOUT PREJUDICE to being renewed following the resolution of the arbitration.

2. The original motions filed by Beiler and Foster (Docs. 10, 12) are DENIED AS MOOT.

3. Foster's motion to participate in electronic filing (Doc. 19) is GRANTED.

4. The parties shall file a joint report of arbitration every ninety (90) days. Failure to file such reports may result in dismissal of the action.

                                              /s/   Thomas D. Schroeder
                                         United States District Judge

June 20, 2014